FILED

2013 Mar-29  PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRIS MEWBOURNE, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | |
| | } | **CASE NO. 2:12-cv-0661-SLB** |
| CHEYTAC, USA, LLC, | } | |
| JAMISON INTERNATIONAL V, LLC, | } | |
| and MARC JAMISON, | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is presently before the court on defendant Jamison International V, LLC's ("Jamison International") Motion to Dismiss and/or Transfer, (doc. 10),[1] defendants Cheytac, LLC; Cheytac USA, LLC (collectively the "Cheytac entities"); Greenwich Ballistics, LLC ("Greenwich"); and Corey Kupersmith's ("Kupersmith") Joinder of Motion to Dismiss and/or Transfer, (doc. 12),[2] and plaintiff's Motion for Leave to File Amended Complaint, (doc. 17). Upon consideration of the Motions, the relevant law, and arguments of counsel, the court is of the opinion that the Motions to Dismiss on the basis of lack of personal

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.

[2] As discussed later, Cheytac, LLC, Greenwich Ballistics, LLC, and Corey Kupersmith all filed for bankruptcy on December 29, 2012, (*see* doc. 28), which resulted in their dismissal from this action, (*see* doc. 29). Accordingly, only Cheytac USA, LLC shall be considered under the arguments made in the Cheytac entities' and Kupersmith's Joinder of Motion to Dismiss and/or Transfer. (Doc. 12.)

jurisdiction are due to be granted[3]; and plaintiff's Motion for Leave to File Amended Complaint is due to be denied.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of the alleged employment of Chris Mewbourne ("plaintiff") by the defendants as a salesperson for products made by the Cheytac entities and Jamison International. Although the Complaint does not make this allegation, Jamison International's Brief states that the Cheytac entities are in the business of "designing and selling long range rifles." (Doc. 10-1 at 6.) Jamison International, which is now defunct and in receivership "was in the business of manufacturing ammunition cases and ammunition of various calibers." (*Id.* at 7.) The individual defendants were involved in various capacities as owners and stakeholders of the incorporated defendants. (*See id.* at 6-10.) Plaintiff claims that in 2007, defendants, acting collectively through certain agents, promised plaintiff employment in exchange for a salary plus commissions for the sale of defendants' products. (Doc. 1-1 ¶ 9.) According to the Complaint, plaintiff was promised a wage increase, but was never fully paid for the work performed, including commissions totaling nearly half a million dollars. (*Id.* ¶¶ 10-12.)

This case was originally filed in the Circuit Court of Jefferson County, Alabama, Case Number 01-CV-2012-900285.00, on January 27, 2012. (Doc. 5-1 at 2.) The Complaint

---

[3] Because the court concludes that it does not have jurisdiction over defendants Jamison International and Cheytac USA, LLC, it will not address Jamison International's argument that the Complaint fails to state a claim against it. (*See* doc. 10-1 at 25.)

includes claims of unjust enrichment, breach of contract, unpaid commissions, and a combined claim of negligent, wanton, and willful misrepresentation.  (Doc. 1-1 ¶¶ 15-36.) On February 27, 2012, some of the defendants removed the case to this court.[4]  (Doc. 1 at 1.) The remaining defendants consented to and joined in removal of this action on March 7, 2012.  (*See* doc. 6 at 1, 4; doc. 7.)  Then, on March 13, 2012, *pro se* defendant Marc Jamison filed an Answer to the Complaint.  (Doc. 9.)  Subsequently, on April 2, 2012, Jamison International filed the Motion to Dismiss and/or Transfer currently before the court.  (Doc. 10.)  The Motion primarily seeks dismissal for lack of personal jurisdiction over Jamison International or to transfer the case in the alternative, but it also argues that plaintiff fails to adequately plead and state claims for relief.  (*Id.* at 4-5.)  On April 3, 2012, the remaining defendants, with the exception of Marc Jamison, joined Jamison International's Motion to Dismiss and/or Transfer.  (Doc. 12.)  In response to the Motion, the court entered an Order, which provided a briefing schedule and set the Motion for oral argument.  (Doc. 14.)

Later, on April 12, 2012, plaintiff filed an Amended and Restated Complaint ("Amended Complaint") against all defendants in this action.  (Doc. 15.)  In addition to filing the Amended Complaint, plaintiff also filed a Motion to Remove Briefing Schedule and Oral Argument regarding the date set for defendants' Motion to Dismiss.  (Doc. 16.)  Plaintiff claimed that the Amended Complaint was timely filed as a matter of course pursuant to Rule

---

[4] On March 5, 2012, defendants filed their Corrected Notice of Removal, which affirmed that the removing defendants received service of process of this action on February 3, 2012 and not January 25, 2012 as the original Notice of Removal stated.  (Doc. 5 ¶ 6.)

15 of the Federal Rules of Civil Procedure.  (*Id.* ¶ 4.)  Thus, according to plaintiff, the Amended Complaint superseded the original Complaint and rendered the Motion to Dismiss and the court's briefing Order moot.  (*Id.* ¶ 5.)

While plaintiff's Motion to Remove the briefing schedule was pending, plaintiff filed a Motion for Leave to File Amended Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.  (Doc. 17.)  Plaintiff states in the Motion that prior to his filing the Amended Complaint, Marc Jamison filed "a pleading titled as 'Answer.'"  (*Id.* ¶ 2.) However, because plaintiff was able to e-file his Amended Complaint more than 21 days after Marc Jamison answered the original Complaint, plaintiff is unsure if the court deems the filing "as an answer such that the Plaintiff's Amended Complaint . . . may have been untimely under FRCP Rule 15(a)."[5]  (*Id.*)  Accordingly, plaintiff filed his Motion for Leave to File Amended Complaint "[i]n the event that [plaintiff's] filing is deemed by the [c]ourt to be an answer such that leave is required . . . to file an Amended Complaint."  (*Id.* ¶ 3.)

Finally, as noted earlier, Cheytac, LLC, Greenwich Ballistics, LLC, and Corey Kupersmith all filed a Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court for the District of Connecticut on December 29, 2012, (*see* doc. 28), which resulted in their dismissal from this action, (*see* doc. 29).  Accordingly, Cheytac USA, LLC is the only

---

[5]  The confusion appears to stem from the fact that Marc Jamison's Answer is handwritten and very brief; it lists only affirmative defenses and generally denies all allegations in the original Complaint.  (*See* doc. 9.)  On its face, the pleading's general denial meets the minimum requirements as an answer under the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 8(b)(3) ("A party that intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds—may do so by a general denial.")

remaining Cheytac entity whose arguments, (*see* doc. 12; doc. 10), will be considered in this Opinion.

## II. DISCUSSION

### A.  PRELIMINARY MATTERS

### 1.  Plaintiff's Amended Complaint

The Amended Complaint, (doc. 15), filed by plaintiff on April 12, 2012, was not timely as a matter of course.  Federal Rule of Civil Procedure 15(a)(1) grants plaintiff leave to amend his Complaint once as a matter of course "within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . whichever is earlier."  Marc Jamison filed his Answer on March 13, 2012.  (*See* doc. 9.)  Thus, the purported Amended Complaint was filed more than 21 days after a responsive pleading and was untimely under Rule 15(a)(1).  Accordingly, the court only considers the facts as alleged in the original Complaint and the parties' affidavits in support of their briefs on the Motion and Joinder currently before the court.

Further, the additional facts in plaintiff's proposed Amended Complaint, (*see* doc. 15), are substantially the same as the facts stated in plaintiff's Affidavit, (*see* doc. 23), submitted in support of his Opposition to the Motion to Dismiss, (*see* doc. 18).[6]  Allowing amendment at this point would be futile because the material facts bearing on the personal jurisdiction issues have been submitted by both parties.  Thus, the court agrees with defendants that "the

---

[6]  No "facts" or allegations in the proposed Amended Complaint would change the court's analysis of the jurisdictional issues addressed in this Opinion.

issue of personal jurisdiction is ripe for adjudication under the current state of the pleadings and there is no need to allow an amended complaint until the issue of personal jurisdiction has been decided." (Doc. 19 at 3.)

### 2. Motion to Dismiss Versus Motion for Summary Judgment

Plaintiff argues that Jamison International's Motion to Dismiss should be treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) because the Motion addresses matters outside the pleadings by way of affidavits submitted in support of the Motion. (Doc. 18 at 1-2.) However, as Jamison International correctly points out, Rule 12(d) only applies to motions made pursuant to Rules 12(b)(6) and 12(c): "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Although Jamison International's Motion argues in the alternative that plaintiff fails to state a claim, the affidavits submitted by defendants only concern their arguments under Rules 12(b)(2) and 12(b)(3)—personal jurisdiction and venue respectively. Further, the court does not address defendants' arguments pursuant to Rule 12(b)(6). Accordingly, the court may consider the affidavits without converting the Motion and Joinder into a motion for summary judgment.

### B. PERSONAL JURISDICTION

At the outset, "[t]he plaintiff has the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant." *Meier ex. rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002); *see also United Techs. Corp. v. Mazer*, 556

F.3d 1260, 1274 (11th Cir. 2009) ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.").  In order to meet this burden and show that a prima facie case is established, "the plaintiff [must] present[] enough evidence to withstand a motion for directed verdict." *Meier*, 288 F.3d at 1269.  Then, "[w]here, as here, the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction."  *Id*.  Finally, all reasonable inferences are drawn in favor of plaintiff where his "complaint and supporting evidence conflict with the defendant's affidavits." *Id.* (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

In diversity actions, the federal district court "may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355 (11th Cir. 2000) (citing *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260 (5th Cir. Unit A Aug. 1981)).  Ala. R. Civ. P. 4.2(b) effectively serves as Alabama's "long-arm" statute and authorizes personal jurisdiction to the extent allowed under the United States Constitution. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b); *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001)).  Because Alabama authorizes personal jurisdiction to the extent allowed under the Constitution, the court's inquiry is whether personal jurisdiction over the defendants in this case "would violate the Due Process Clause of the Fourteenth Amendment,

which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 925 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Further, personal jurisdiction can be broken down into two types—general and specific—and the nature and quality of a defendant's contacts as required by the Due Process clause vary with each.  *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).  The court will now examine each of these to determine if plaintiff has pled sufficient facts to establish personal jurisdiction over the remaining defendants.

**1. General Jurisdiction**

General jurisdiction is said to exist when the suit "does not arise out of or relate to the [defendant's] activities in the forum State . . . ." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citations omitted).  To establish general personal jurisdiction, there must be a "showing of continuous and systematic general . . . contacts between the defendant and the forum state." *Sherritt*, 216 F.3d at 1292 (citations omitted). Moreover, "[t]he due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction . . . . " *Meier*, 288 F.3d at 1274 (internal quotations and citations omitted).  However, "due process is not offended by a State's subjecting the [defendant] to its in personam jurisdiction when there are sufficient contacts between the State and the [defendant]." *Helicopteros*, 466 U.S. at 414.

**Jamison International**

The Complaint fails to allege sufficient facts to establish that the court has general

8

personal jurisdiction over Jamison International.  Jamison International is a limited liability company organized under the laws of South Dakota.  (Doc. 10-3 ¶ 3.)  The company is owned by Marc Jamison, a resident of South Dakota, and Greenwich Ballistics, LLC, a Delaware limited liability company, (doc. 10-2 ¶¶ 2, 5), and its principal place of business is located in Sturgis, South Dakota, (*id.* ¶ 4).  According to the Complaint, Jamison International transacts business and supplies goods and services in Jefferson County, Alabama.  (Doc. 1-1 ¶ 4.)  But as defendant Jamison International correctly argues, these conclusory "allegations" are not facts.  (Doc. 10-1 at 13.)  Further, the Complaint states no additional allegations describing exactly how Jamison International conducts such business in Alabama.  Rather, plaintiff summarily asserts that Jamison International "is an alter ego of Cheytac and all other Defendants named in this lawsuit and is thereby liable jointly and severally for all claims asserted against the Defendants . . . ."  (*Id.*)  The remaining allegations in the Complaint merely refer to the defendants collectively and do not specifically name Jamison International or state that the company routinely conducts business in Alabama.  (*See generally* doc. 1-1.)

To counteract the allegations of the Complaint, the Affidavit of Marc Jamison, which contains many specific statements regarding Jamison International's business activities, is attached as an exhibit to Jamison International's Motion to Dismiss.  (*See* doc. 10-2.)  In the Affidavit, Jamison testified that the company has no presence in Alabama and did not employ plaintiff, (doc. 10-2 ¶¶ 20-23), and that plaintiff did not sell or market any products on Jamison's behalf, (*id.* ¶ 12).  He further states that Jamison International did not participate

9

in plaintiff's hiring, the negotiation of his contract, or the terms of his work for the Cheytac entities.  *Id.*  In addition, Jamison International "does not have any employees in Alabama and is not licensed or registered to do business in the State of Alabama," (*id.* ¶ 20), nor does the company "have any agents in Alabama" or "regularly conduct business in the State of Alabama."  (*Id.*)  On top of this, Jamison adds that "Jamison International does not have any suppliers in Alabama," and none of its five distributers in the United States are located in Alabama.  (*Id.* ¶ 23.)  He states that though he may have traveled through Alabama in the 1970's before Jamison International was formed, he has never visited the State otherwise or on behalf of Jamison International.  (*Id.* ¶ 24.)

Plaintiff counters Jamison International's Brief and Affidavits with his own Affidavit submitted in conjunction with his Opposition, where he states that he "was the only dedicated . . . Jamison salesman" between November 2007 and December 2011.  (Doc. 23 ¶ 6.) According to plaintiff, his "main focus was on selling a 'kit' that contained a Cheytac sniper rifle and a 198 round can of ammunition that was manufactured by Jamison for exclusive use in Cheytac weapons."  (*Id.* ¶ 5.)  Assuming this is true, plaintiff's testimony is undercut by the Affidavit of Marc Jamison, which explains that the Cheytac entities purchased "specialized ammunition" and other products from Jamison International for use in Cheytac products.  (Doc. 10-2 ¶¶ 8-9.)  Further, Jamison states that plaintiff occasionally "placed orders for CheyTac products from Jamison International" but that the orders were "billed to, and paid by, CheyTac" who in turn sold them to its customers.  (*Id.* ¶ 13.)  And, according to Marc Jamison, Plaintiff did not sell or market any products on behalf of Jamison

10

International.  (*Id.* ¶ 12.)  Plaintiff's conclusory statements that he was employed by Jamison International and sold their products from Alabama do not constitute "evidence supporting jurisdiction," *Meier*, 288 F.3d at 1269, and therefore, he has failed to carry the burden that shifted to him once defendants offered specific evidence to the contrary.  And in any event, the remaining paragraphs in plaintiff's Affidavit implicate Jamison International in isolated and sporadic contacts with Alabama and not continuous and systematic general business contacts so that the court could assert jurisdiction over Jamison International without upsetting traditional notions of fair play and substantial justice.

Plaintiff's alter ego argument as to Jamison International is equally unavailing and unsupported in his Opposition and accompanying Affidavit.  At its most basic level, "a corporation is a distinct and separate entity from the individuals who compose it as stockholders or who manage it as directors or officers."  *Nimbus Techs., Inc. v. SunnData Prods., Inc.*, 484 F.3d 1305, 1308 (11th Cir. 2007) (citation omitted).  The corporate form may be set aside, however, "as a means of preventing injustice or inequitable consequences." *Id.* (citation omitted).  The concept of piercing the corporate veil recognizes that the corporate form may be disregarded "when a corporation is so organized and controlled and its business so conducted as to make it a mere instrumentality of another or the alter ego of the person owning and controlling it."  *Id.*  Such a finding would subject the controlling individual or entity to liability for the acts of the alter ego corporation.  Plaintiff argues, however, that Jamison International "as an alter ego of the other defendants" is subject to personal jurisdiction based on the contacts of defendants as controlling entities of Jamison

11

International—the reverse of the traditional alter ego theory of liability.  (Doc. 18 at 7.)

The court is unaware of a decision by the Eleventh Circuit addressing this precise scenario; however, the Tenth Circuit explains that the argument advanced by plaintiff is illogical and inequitable in the context of personal jurisdiction.  *Home-Stake Prod. v. Talon Petroleum*, 907 F.2d 1012, 1021 (10th Cir. 1990).  In *Home-Stake*, the Tenth Circuit held that a parent's contacts with the forum could not be imputed to its subsidiaries based solely on an alter ego analysis:

> When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former. . . . In such situations, attribution of contacts to the [controlling] individual defendant merely reflects the reality that, although the contacts were ostensibly those of the corporation, the true actor was the individual. The same situation obtains in those cases holding a corporate parent to answer for conduct within the forum carried out by an alter ego subsidiary.
>
> But the rationale of these cases does not support the proposition that, because the court has jurisdiction over a parent corporation or dominating individual, without more, it has jurisdiction over the alter ego corporation. The dominated corporation does not direct and control its dominating corporate or individual alter ego. Accordingly, it is unfair to impute to the dominated corporation the forum contacts of its alter ego. . . . [The alter ego defendants] have, as much as any other defendant, a constitutionally protected liberty interest in not being subject to the binding judgments of a forum with which [they have] established no meaningful contacts, ties, or relations.

*Home-Stake*, 907 F.2d at 1020-21 (internal quotation marks and citations omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 471-72 (1985)); *see also Vacation Travel Int'l, Inc. v. Sunchase Beachfront Condo. Owners Ass'n*, CIVA 06CV02195 LTBCB, 2007 WL

757580, *5 (D. Colo. Mar. 8, 2007) ("While under some circumstances a subsidiary corporation's contacts may be imputed to a parent for the purposes of jurisdiction, the reverse is not true.").

The court finds the reasoning in *Home-Stake* persuasive.  Even assuming the court would have personal jurisdiction over any of the other defendants and that Jamison International is merely the alter ego of any or all the other defendants as plaintiff posits, Jamison International should not reasonably expect to be haled into court based solely on the actions of its parent in the forum state.  Such a result comports with the constitutional limitations on the court's exercise of personal jurisdiction, especially since it appears that Jamison International conducts no business in Alabama and otherwise maintained no continuous or systematic contacts within the state.  *Cf. Helicopteros*, 466 U.S. at 417. ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

However, it is worth noting that the reasoning in *Home-Stake* was not followed in *Sanford v. National Association for the Self-Employed, Inc.*, CIV 09-22-P-H, 2009 WL 1448720 (D. Me. May 21, 2009), which addressed a similar issue.  In *Sanford*, one of the defendants, a wholly owned subsidiary of a co-defendant, moved to dismiss for lack of personal jurisdiction, based on the argument that it could not as a matter of law be subject to personal jurisdiction based solely on the forum contacts of its dominating parent.  *Id.* at *8.  The defendant relied, in part, on the holding in *Home-Stake*.  *Id.*  While it acknowledged

13

that the holding in *Home-Stake* squarely addressed and supported the defendant's position, the *Sanford* court cited several cases reaching an opposite conclusion, which were based on the rationale that the parent misused the subsidiary or dominated it such that there was no distinction between the two, rendering the subsidiary a "mere department" of the parent. *Id.* at *9 (citing *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998); *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, Civil Action No. 04-332(EGS), 2006 WL 2711527, at *13 (D.D.C. Sept. 21, 2006); *Holme v. Global Minerals & Metals Corp.*, No. 600232/08, 2009 WL 387034, at *2 (N.Y. Sup. Ct. Jan. 12, 2009)).  The *Sanford* court then reasoned that a subsidiary may be subject to personal jurisdiction for its parent's contacts if plaintiff can show abuse of the corporate form and an unjust result as a consequence of recognizing the separate corporate existence of the subsidiary. *Id.* at *10 (citations omitted).

Although the court follows the reasoning in *Home-Stake*, it finds that plaintiff's Affidavit as cited in his Opposition provides only argumentative and conclusory statements, which do not persuade the court to impute the contacts of all other defendants to Jamison International.  Aside from Greenwich's majority ownership of Jamison International, plaintiff contends that Jamison International has operated "under the common control and ownership" of Kupersmith, Tom Randel ("Randel"), or Paul Jannuzzo ("Jannuzzo").  (Doc. 18 at 9 (citing doc. 18-1 ¶ 10).)  And it is plaintiff's "belief" that Greenwich "has no purpose other than to add another layer to Kupersmith's ownership of Jamison [International]."  (*Id.* at 11 (citing doc. 18-1 ¶ 16).)  Plaintiff further alleges that Jamison International was "thinly

14

capitalized" and that Marc Jamison and Kupersmith frequently "co-mingled assets" of Jamison International with their own. (*Id.* at 10 (citing doc. 18-1 ¶¶ 14-15).) The contention that Greenwich is nothing more than a buffer entity to shield and separate Jamison International and Kupersmith from each other's acts is based only on plaintiff's belief and not his personal knowledge. Without more, such summary arguments and legal conclusions are unconvincing and are contested by the Affidavit of Marc Jamison, which provides that Jamison International was a separate business and that the Cheytac entities were merely customers of Jamison International. (Doc. 10-2 ¶¶ 8-11.) Accordingly, plaintiff has failed to carry his burden.

Because the Affidavit of Marc Jamison refutes any basis for general personal jurisdiction in the Complaint, and plaintiff's Affidavit does not sufficiently overcome the testimony of Marc Jamison, the court finds that plaintiff fails to establish that the court has general personal jurisdiction over Jamison International.

**Cheytac USA, LLC**

Plaintiff also fails to establish that Cheytac USA, LLC is subject to general personal jurisdiction in Alabama. Cheytac USA is a limited liability company organized under the laws of Georgia. (Doc. 21 ¶ 4.) According to the Complaint, Cheytac USA transacts business, supplies goods and services, and otherwise does business in Jefferson County, Alabama. (Doc. 1-1 ¶ 3.) However, the Complaint states no further allegations supporting exactly how Cheytac USA conducts such business in Alabama. Rather, plaintiff summarily asserts that the company "is an alter ego of Cheytac [LLC] and all other Defendants named

15

in this lawsuit and is thereby liable jointly and severally for all claims asserted against the Defendants . . . ." (*Id.*)  Cheytac USA allegedly employed plaintiff from November 2007 through December 2011 as a "Sales Director, Vice President of Marketing and Customer Service and as HAZMAT Officer" but failed to pay plaintiff certain compensation and benefits for said services rendered.  (*Id.*)  The remaining substantive allegations in the Complaint refer to "Defendants" collectively and discuss the salary and sales commissions defendants promised and failed to pay plaintiff.  (*Id.* ¶¶ 9-14.)

Notwithstanding these allegations, the court concludes that plaintiff has not pled facts establishing Cheytac USA is subject to personal jurisdiction in Alabama.  The Affidavit of David McCutcheon ("McCutcheon") submitted in conjunction with the Joinder of Motion to Dismiss explains that Cheytac USA was organized in Georgia in 2011 after Cheytac, LLC was unable to continue to operate.  (Doc. 21 ¶¶ 4, 7.)  The new company "was formed for the sole purpose of obtaining the patent rights from Greenwich Ballistics and to further attract investment capital to manufacture and exploit the Cheytac brand goods."  (*Id.* ¶ 8.)  Cheytac USA's sole place of business is in the state of Georgia.  (*Id.* ¶ 5.)  According to McCutcheon, few if any products have been sold or shipped by Cheytac USA.  (*Id.* ¶ 10.)  Further, plaintiff has never performed any services on behalf of the company nor was he paid by the company for any such services.  (*Id.* ¶¶ 11-12.)  Also, Cheytac USA never maintained an office or bank account in Alabama nor paid taxes or owned property in the State.  (*Id.* ¶ 16.)

Plaintiff's Affidavit submitted in conjunction with his Opposition fails to show that Cheytac USA maintained general business contacts with Alabama.  (*See* doc. 23.)  Neither

16

the allegations in the Complaint nor the allegations in plaintiff's Affidavit are sufficient to show that Cheytac USA maintained any significant and continuous contacts with the State. Thus, the court finds McCutcheon's Affidavit refutes the conclusory allegations in the Complaint purporting to show Cheytac USA maintained continuous and systematic contacts with Alabama.

The court also rejects plaintiff's argument that Cheytac USA is subject to general personal jurisdiction as an alter ego of all other defendants.  The Complaint does not specifically allege the relationship between Cheytac USA and the other defendants. According to McCutcheon, however, he is the "sole manager" of the company.  (Doc. 21 ¶ 6.)  He further testified that the company was formed to "exploit the Cheytac brand goods" and that he is "exploiting th[e] opportunity on [his] own behalf with [his] own funding." (*Id.* ¶ 8).  However, he also stated that Kupersmith retains a minority interest in the company. (*Id.* ¶ 14.)  McCutcheon affirmatively stated from personal knowledge that Cheytac USA did not co-mingle funds with Cheytac, LLC; there is no successor liability or unity of interest between the Cheytac entities; and Kupersmith has no control over Cheytac USA.  (*Id.* ¶¶ 9, 14-15.)  Plaintiff's Affidavit asserts that all the corporate defendants "were under the common control and ownership of Kupersmith (either individually or by and through Greenwich . . . of which he owns 100%), Tom Randel . . . or Paul Jannuzzo." (Doc. 23 ¶ 10.) Plaintiff's Opposition brief also provides a graphic table indicating that Kupersmith owns 50 percent or more of Cheytac USA.  (Doc. 18 at 8.)  These assertions are directly contradicted by McCutcheon's Affidavit, which states that Kupersmith is a minority owner

17

and does not direct or control the operations of Cheytac USA. (*See* doc. 21 ¶ 14.) Even assuming that Cheytac USA is the mere alter ego of Kupersmith, it is illogical to impute to a subsidiary the alleged contacts of its parent, especially when, as in this case, it appears that Kupersmith maintained no control over Cheytac USA. *See Home-Stake*, 907 F.2d at 1020-21. *Id.* The conclusory statements suggesting that Kupersmith improperly co-mingled personal assets with Cheytac USA, (*see* doc. 23 ¶ 15, 18), are insufficient to establish that Kupersmith abused the corporate form through his minority stake in the company.

### 2. Specific Jurisdiction

Specific jurisdiction exists when "a party's activities in the forum state . . . are *related* to the cause of action alleged in the complaint." *Eurisol*, 488 F.3d at 925 (emphasis added) (internal quotation marks and citation omitted). The Eleventh Circuit has stated that to satisfy specific jurisdiction, there are at least three criteria that a defendant's minimum contacts with the forum state must satisfy:

> they must be related to the plaintiff's cause of action or have given rise to it; they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and they must be such that the defendant should reasonably anticipate being haled into court there.

*Id.* (internal quotation marks and citations omitted). The Supreme Court has explained that the "purposeful availment" requirement guards against a defendant being "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). However,

18

"[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (citations omitted).

**Jamison International**

Plaintiff's Complaint does not allege sufficient facts to establish that Jamison International maintained sufficient minimum contacts with the forum such that it would reasonably expect to be haled into court in Alabama. The Complaint states that Jamison International "is a South Dakota limited liability company transacting business, supplying goods and services and otherwise doing business in Jefferson County, Alabama." (Doc. 1-1 ¶ 4.) The remaining substantive allegations in the Complaint refer only to "Defendants" collectively but do not refer specifically to Jamison International. (*Id.* at ¶¶ 9-14.) Plaintiff alleges that "defendants" employed him in exchange for a monthly salary plus commissions from sales of their products, that plaintiff sold over $3 million worth of the products, and that he was not paid all of the salary or commissions owed to him. (*Id.* ¶¶ 9-10, 12-13.) However, the Complaint also specifically states that plaintiff was actually employed by the Cheytac entities as "Sales Director, Vice President of Marketing and Customer Service and as HAZMAT Officer." (*Id.* ¶¶ 2-3.)

Jamison International's Brief in Support of its Motion cites to the Affidavit of Marc Jamison, which provides specific facts sufficient to shift the burden back to plaintiff to provide contradictory evidence supporting his allegations as to Jamison International: namely, that Jamison International employed him or promised to pay him for selling its

Case 2:12-cv-00661-SLB   Document 30   Filed 03/29/13   Page 20 of 25

products.  (Doc. 10-1 at 16-17; *see also* doc. 10-2 ¶ 12.)  As discussed above, Marc Jamison states that Jamison International manufactured products which the Cheytac entities then purchased from it as customers.  (Doc. 10-2 ¶¶ 8-9.)  Jamison also states that plaintiff did not market or sell any products on behalf of Jamison International.  (*Id.* ¶ 12.)  He further testified that neither he nor Jamison International have entered into any contracts or agreements with plaintiff.  (*Id.* ¶ 22.)  And none of the individuals who may have negotiated details of plaintiff's alleged employment, (*see* doc. 1-1 ¶ 12; doc. 23 ¶¶ 10-12), were ever on the payroll of Jamison International, (*id.* ¶ 18).  Finally, although plaintiff ordered products for Cheytac from Jamison International, Jamison states that plaintiff placed the orders on behalf of Cheytac, which was then billed and paid for the goods.  (*Id.* ¶ 13.)

On the other hand, plaintiff's Affidavit submitted in conjunction with his Opposition brief recounts several instances regarding employment arrangements with Jamison International in Alabama.  First, plaintiff says he "negotiated" his employment from his home in Alabama "with Paul Jannuzzo, agent of Cheytac, LLC . . . and Jamison International." (Doc. 23 ¶ 3.)  Sometime in 2009, plaintiff met with Kupersmith at a country club in Alabama "for the specific purpose of discussing business opportunities for Cheytac, Cheytac USA and Jamison [International]." (*Id.* ¶ 7.)  Additionally, plaintiff states that Jannuzzo was the CEO of Jamison International during the company's infancy and that Jannuzzo "directed the manner of [plaintiff's] employment." (*Id.* ¶ 12.)  Sometime later, Tom Randel acted as plaintiff's "direct supervisor and directed the manner and means of [his] employment" through daily telephone conversations.  (*Id.* ¶ 11.)  He asserts that Randel was the "Chief

20

Financial Officer of each business controlled by Kupersmith." (*Id.* ¶ 10.) Thus, Jamison International appears to be implicated in each of these instances of alleged contact with plaintiff in Alabama under the generalized statement that the Cheytac entities and Jamison International "were under the common control and ownership of Kupersmith (either individually or by and through Greenwich . . .), Tom Randel . . . , or Paul Jannuzzo." (*Id.*)

In his Affidavit, plaintiff discusses his duties as a sales representative of Jamison International and states that he "was the only dedicated . . . salesman" for Jamison International and the Cheytac entities for approximately four years. (*Id.* ¶ 6.) However, most of the "leads" for sales of Jamison International products "came via the Cheytac website and trade shows." (*Id.*) Plaintiff alleges that he placed sales calls "to several businesses and governmental entities within the state of Alabama, including . . . the City of Birmingham Police Department," among others. (*Id.* ¶ 8.) Further, plaintiff's "main focus" involved selling a Cheytac sniper rifle that included "ammunition that was manufactured by Jamison for exclusive use in Cheytac weapons." (*Id.* ¶ 5.)

Jamison International's and plaintiff's Affidavits in support of their jurisdictional arguments state fundamentally conflicting facts. Because Jamison International contested plaintiff's jurisdictional allegations in the Complaint by of way of the factual statements contained in Marc Jamison's Affidavit, the burden then shifted to plaintiff to establish the court's jurisdiction over Jamison International. *Meier*, 288 F.3d at 1269; *see also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1277 (11th Cir. 2009) ("[S]pecific factual declarations within the affiant's personal knowledge, . . . are sufficient to shift to the Plaintiff the burden

of producing evidence supporting jurisdiction." (internal quotation marks and citation omitted))*.* If the plaintiff's Affidavit conflicts with defendant's, the court must construe all reasonable inferences in favor of the plaintiff. *Meier*, 288 F.3d at 1269.  However, the court is not obligated to accept mere legal conclusions posited as facts in an affidavit. *See Mazer*, 556 F.3d at 1276-77.

Here, the conclusory statements in plaintiff's Affidavit regarding the contacts of Jamison International with Alabama are insufficient to carry his burden to contest the specific statements that Jamison International has provided.  For the most part, plaintiff merely lumps Jamison International together with the Cheytac entities when describing employment negotiations or duties.  Although plaintiff says he was supervised by or received directions from agents or employees of Jamison International who were also agents of the Cheytac entities or were employed by all the entities controlled by Kupersmith, he does nothing more than conclusively assert that such relationships existed.  The court does not accept these conclusions and mere legal assertions as facts: "[m]ere averments of jurisdiction are not enough nor may conclusory, unsupported statements contained in accompanying affidavits be relied upon to demonstrate jurisdiction." *Melech v. Life Ins. Co. of N. Am.*, CIV.A. 10-0573-KD-M, 2011 WL 1047716, *3 (S.D. Ala. Mar. 1, 2011), *report and recommendation adopted,* CIV.A. 10-00573-KD-M, 2011 WL 995821 (S.D. Ala. Mar. 18, 2011) (quoting *Gen. Elec. Credit Corp. v. Scott's Furniture Warehouse Showroom, Inc.*, 699 F. Supp. 907, 910 (N.D. Ga. 1988)) (internal quotation marks omitted).

Because the court does not accept the conclusory statements in plaintiff's Affidavit,

22

it finds that Jamison International sufficiently refuted the jurisdictional allegations in the Complaint.  Therefore, the Complaint fails to allege the existence of sufficient minimum contacts between Jamison International and Alabama such that Jamison International would reasonably expected to be haled into court in the state.

### Cheytac USA, LLC

Plaintiff's Complaint also fails to establish that Cheytac USA maintained sufficient minimum contacts with the forum such that it would reasonably expect to be haled into court in Alabama.  As discussed when analyzing general jurisdiction, the Complaint alleges generally that Cheytac USA transacted business in Alabama and employed plaintiff in various capacities, including as a salesperson.  (Doc. 1-1 ¶ 3.)  It is further alleged that defendants, including Cheytac USA, made certain employment promises to plaintiff through various agents, such as the payment of salary, sales commissions, and other benefits.  (*Id.* ¶¶ 9-14.)  Plaintiff claims that he sold a substantial amount of "Defendants' products," (*id.* ¶ 12), and should have been paid wages and commissions accordingly, (*id.* ¶ 12-13).

In direct contradiction to the allegations in the Complaint, McCutcheon's Affidavit states that "no material amount of good, [sic] firearms or ammunition have been sold or shipped by Cheytac USA, LLC." (Doc. 21 ¶ 10.)  Further, plaintiff was neither employed nor paid by Cheytac USA.  (Doc. 21 ¶ 11-12.)  McCutcheon adds that at the company's inception "[p]laintiff was offered to participate in the business, but refused to sign the required paperwork . . . and therefore was never included in any business dealings of Cheytac USA, LLC."  (*Id.* ¶ 13.)

23

Rather than squarely address McCutcheon's statements that plaintiff never performed any work on behalf of Cheytac USA and was in fact excluded from all dealings with the company after being given the chance to participate in the business, plaintiff merely lumps Cheytac USA in with Cheytac, LLC and Jamison International by claiming that he performed work for all three. (Doc. 23 ¶¶ 6, 8, 17.) Without more, plaintiff's generalizations that he was employed by, performed work for, and was paid by Cheytac USA, are insufficient to carry his burden of establishing specific jurisdiction over Cheytac USA when Cheytac USA submitted direct evidence *specifically* disputing such claims. Because plaintiff has failed to establish the existence of sufficient minimum contacts between Cheytac USA and Alabama such that the company would reasonably expect to be haled into court in the State, Cheytac USA's Motion to Dismiss for lack of personal jurisdiction is due to be granted.

### C. MOTION TO TRANSFER

Because the court finds it does not have personal jurisdiction over Jamison International or Cheytac USA and that the Motion to Dismiss on that basis is due to be granted, the court will not address the Motion to Transfer as to either party. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action." (citation omitted)). The Motion to Transfer is deemed moot as to both Jamison International and Cheytac USA.

### III.  CONCLUSION

Based on the foregoing and as directed by the court's Order entered contemporaneously with this Opinion, Jamison International's Motion to Dismiss, (doc. 10),

and Cheytac USA's Joinder of Motion to Dismiss, (doc. 12), will be granted.  The Motions to Transfer filed by both defendants are deemed moot.  Plaintiff's Motion for Leave to File Amended Complaint, (doc. 17), will be denied.  An Order in accordance with this Opinion will be entered.

       **DONE** this 29th day of March, 2013.

_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

25